## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MIGNON EUGENIE GUISHARD-POLE                    **Jury Trial Demanded**

Plaintiff

v.

COINBASE, INC., and
COINBASE GLOBAL, INC

Defendants
_____/

### COMPLAINT

COMES NOW the Plaintiff, MIGNON EUGENIE GUISHARD-POLE, through

undersigned counsel, (herein referred to as "Plaintiff" or "Guishard-Pole") and states in support

as follows:

### <u>NATURE OF THE ACTION</u>

This is an action for COUNT I: NEGLIGENCE, COUNT II: GROSS NEGLIGENCE,

COUNT III: BREACH OF FIDUCIARY DUTY, and COUNT IV: BREACH OF CONTRACT

AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, COUNT V:

VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT 15 U.S.C. § 1693 et seq.,

COUNT VI: VIOLATION OF REGULATION E NOTICE REQUIREMENTS 15 U.S.C. §

1693c; 12 C.F.R. § 1005.7**.**

### INTRODUCTION

1.    This action arises out of Coinbase Inc.'s and Coinbase Global, Inc.'s (hereinafter

"Coinbase") systemic and repeated failures to protect and safeguard consumer Mignon

Eugenie Guishard-Pole's digital assets as required by federal law.

1

2.     As a result of Coinbase's misconduct, including their gross negligence in securing Plaintiff Guishard-Pole's Account, 10 BTC worth $488,260.90 when originally deposited, were stolen.

3.     Guishard-Pole, age 70, co-founded Absolute Home Health Car, in Mount Vernon, NY, in which she dedicated her career to providing nurturing and restorative home care services. She had planned to retire this year prior to the theft.





**SECURITY**

## The most trusted crypto exchange

98+ million users trust us, and so can you.

Sign up now

***The above image appeared on Coinbase's Website at the time of the hack.***

4.     Plaintiff Guishard-Pole detrimentally relied on statement that Coinbase was "The most trusted crypto exchange."

5.     Coinbase advertised "Our security team is constantly working to make sure you and your assets are protected from emerging threats."

6.     However, on August 18, 2022, Guishard-Pole's account was hacked and all her BTC were withdrawn by a third-party hacker.



### We're a public company, built in the USA

In April 2021, Coinbase became the largest public crypto company. That means we operate with more financial transparency: we publish financial statements quarterly and we're audited annually by an independent third-party as required by law.



### We hold our customers' assets 1:1

Your crypto is your crypto. It's that simple. Coinbase doesn't lend or take any action with your assets without your permission. Also, we offer the most secure and multifaceted risk management programs designed to protect our customers' assets.



### We respect your rights over your personal information

We only collect the necessary personal data in order to provide you with the best protection and services we can – and are transparent in how we use it and why we share it.



### We use state-of-the-art encryption and security

The technology that powers our platform was developed with industry-leading security and encryption at its core. Our security team is constantly working to make sure you and your assets are protected from emerging threats.

*The above image appeared on Coinbase's Website at the time of the hack.*



### We offer the finest tools to protect your account

From auto-enrolled 2 factor-authentication (with security key support), password protection, to multi-approval withdrawals in Coinbase Vault, we provide powerful security features to all our users.



### Get the help you need, when you need it

You can always contact our support team by phone or messaging to speak with our virtual assistant, or depending on the hours, with a real live support agent. You can also check out our Help Center for quick solutions to common problems.

*Coinbase advertised above about their exceptional customer service and security*

7.     In a series of transactions, the hacker stole the entirety of Guishard-Pole's account.

8.     Whereas Coinbase advertised, "You can always contact our support team by phone….depending on the hours, with a real live support agent," Guishard-Pole was never able to speak to representative.

9.    Coinbase allowed the transfers to occur even though there were red flags. For instance, all the transactions pointed to a foreign IP address that Guishard-Pole never used. Furthermore, Coinbase did not require photo identification to withdraw funds, even though this was required to set up and recover an account.

10.    At all times, Coinbase's standard of care was below that of other similarly situated crypto exchanges licensed to do business in the United States.

11.    Plaintiff seeks approximately $842,450.10, plus costs, pre and post judgment interest, and attorneys' fees, or an amount to be determined at trial, for the violations of the Electronic Funds Transfer Act, which subjects the Defendant to treble damages.

## PARTIES

12.    Plaintiff Guishard-Pole is a resident of White Plains, New York, in Westchester County.

13.    Defendant is a Delaware corporation with a principal place of business in the State of California.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§1331, as this case arises under federal statutes, such as the pursuant to the Electronic Funds Transfer Act, 15 USC § 1693 et seq. ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 ("Regulation E" of the EFTA).

15.    Furthermore, the Court has jurisdiction under 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000.00, inclusive of attorney fees, costs, and statutory interest, and Plaintiff and Defendant are citizens of different states.

16.    Venue is proper in this court as the events relevant to this action occurred in

White Plains, New York, Westchester County, which is located in the United States District Court for the Southern District of New York.

17.     Pursuant to the Court's supplemental jurisdiction under 28 U.S.C. §1367, it may entertain the state law claims as they are derived from a common nucleus of operative facts.

18.     The Defendant has established minimum contacts within New York subjecting them to jurisdiction herein.

19.     Defendant Coinbase provided their services in Westchester County, New York.

20.     Under CPLR 302, this Court can exercise personal jurisdiction over a non-domiciliary who transacts business within the State of New York, pursuant to the New York long arm statute.

21.     The plaintiff's claims all arise out of or relate to the defendant's contacts with the forum thus satisfying the Fourteenth Amendment's Due Process Clause.

22.     All conditions precedent to this action have been met through performance, or otherwise.

23.     Plaintiff has retained the undersigned law firm to represent it in this action and is obligated to pay the firm a reasonable fee for its services.

## GENERAL BACKGROUND

24.     Coinbase Global, Inc. is a publicly-traded corporation involved in the business of cryptocurrency exchange. Its wholly-owned subsidiary, Coinbase, Inc. ("Coinbase"), provides an online platform where consumers can store their currencies on a digital "wallet," as well as to buy, sell, spend, and trade cryptocurrency on exchanges

("platform").

25.    Coinbase is the largest cryptocurrency exchange in the United States.

26.    Coinbase holds 128 billion in assets and 92 billion dollars is traded quarterly on the app[1].

27.    In recent years, Coinbase experienced tremendous growth. The company grew from 199 employees as of December 31, 2017, to 1,717 employees by March 31, 2021. Its net income catapulted from a loss of $30.4 million in 2019 to a positive net income of $3.6 billion in 2021. Its number of monthly transacting users – retail users who make at least one transaction during a given 28-day period – surged from approximately one million per month at the end of 2019 to approximately 11.4 million two years later, an over 1,000% increase. Its total number of verified users grew similarly – from a total of approximately 32 million users in 2019 to approximately 98 million users as of March 2022.

28.    Coinbase's founders made 1.2 billion dollars in share sales as of May 27, 2022, shortly after the company went public.[2]

29.    Despite the influx of cash, Coinbase's user growth outpaced its ability to provide the protections it promises to consumers.

30.    Coinbase earns the vast majority of its income through fees generated primarily from consumers making transactions in cryptocurrency traded on Coinbase's platform.

31.    When Coinbase users make transactions, Coinbase charges consumers substantial transaction fees on cryptocurrency transactions – generally charged as a percentage of

---

[1] https://investor.coinbase.com/home/default.aspx
[2] https://www.wsj.com/articles/coinbase-leaders-net-1-2-billion-in-share-sales-11653606214

the transaction.

32.     Plaintiff Guishard-Pole reasonably believed that Coinbase would provide the safe, secure, and easy-to-access platform it promised.

33.     Coinbase pools the U.S. currency held in customers' "wallets" and places such funds in FDIC-insured bank accounts and/or purportedly invests them in liquid investments. Coinbase keeps the interest and earnings from those funds for itself. According to Coinbase, this makes cash held with Coinbase insured by the FDIC up to the FDIC's coverage limit, which is currently $250,000.00.

34.     The IRS treats cryptocurrency as property and it is taxed accordingly.[3]

35.     Accordingly, the value of cryptocurrency fluctuates according to market conditions on any given trading day at any given time. As of the time of filing, the BTC spot price at 10:20am on October 5, 2023 is worth $28,081.67. https://coinmarketcap.com/currencies/bitcoin/. The ten BTC are worth $280,816.70.

36.     The Securities and Exchange Commission ("SEC") has concluded that crypto assets may qualify as securities pursuant to the Securities Act and the test in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 294 (1946), and issuers of crypto securities are subject to the registration and reporting requirements of the Securities Act.

37.     Coinbase, not the user, in fact, holds the "key" to cryptocurrency placed in a Coinbase account or "wallet." On May 10, 2022, in a quarterly report filed with the Securities and Exchange Commission, Coinbase disclosed:

> [I]n the event of a bankruptcy, the crypto assets we hold in custody on
>
> behalf of our customers could be subject to bankruptcy proceedings and

---

[3] https://www.irs.gov/businesses/small-businesses-self-employed/digital-assets

such customers could be treated as our general unsecured creditors. This may result in customers finding our custodial services more risky and less attractive and any failure to increase our customer base, discontinuation or reduction in use of our platform and products by existing customers as a result could adversely impact our business, operating results, and financial condition.

Coinbase Global, Inc., Quarterly Report (Form 10-Q), at 83 (May 10, 2022).

38.     The "Coinbase Platform" allows users to place market orders – orders to buy, sell, or trade crypto at the crypto's market price displayed on the Coinbase Platform at the time the user places the order.

39.     The "Coinbase Pro Platform" offers users three trading options associated with brokers and electronic trading platforms for traditional securities: market orders, limit orders, and stop orders.

40.     For example, in a cryptocurrency trade between Coinbase users, Coinbase debits the seller's account and then credits the seller's account. The cryptocurrency is not transferred on the public digital ledger (blockchain) for cryptocurrency. Rather, the only actual transactions are between the seller and Coinbase, on the one hand, and the buyer and Coinbase, on the other hand.

41.     When a user withdraws or transfers his or her cryptocurrency outside of Coinbase, the user provides Coinbase with the destination address for the cryptocurrency. Next, the exchange debits the user's account and transfers a corresponding amount of cryptocurrency from Coinbase's centralized reserves to that address. In other words, the

withdrawn assets come from the centralized exchange.

**COINBASE MISLEADS CUSTOMERS ABOUT ACCOUNT SECURITY**

42.     In 2022, for example, Coinbase's security page assured consumers that it follows "Payment Industry Best Practices," takes "careful measures to ensure your bitcoin is as safe as possible," and that "Online Funds Are Now Covered by Insurance." Only on a subsequent page did Coinbase reveal its insurance policy "does not cover any losses resulting from unauthorized access to your personal Coinbase or Coinbase Pro account(s) due to a breach or loss of your credentials." And, in Coinbase's annual report for 2021, Coinbase reveals that, even if its insurance coverage were to ever apply to a consumer's loss, it is underinsured:  the "total value of crypto assets in our possession and control is significantly greater than the total value of insurance coverage that would compensate us in the event of theft or other loss of funds…"

43.     On, November 22, 2021, Coinbase launched a video warning users about Sim Swapping, while simultaneously offering no additional security protections to protect account users.

44.     Coinbase recognizes the responsibilities, risks, and liabilities it undertakes holding its customers' valuable financial assets. For example, Coinbase made the following statement in its Supplement No. 1 to its April 1, 2021, prospectus filed with the Securities and Exchange Commission:

> The Company has committed to securely store all crypto assets it holds on behalf of users. As such, the Company may be liable to its users for losses arising from theft or loss of user private keys. The Company has no reason to believe it will incur any expense associated with such potential liability because (i) it has no known or historical experience of claims to use as a basis of measurement, (ii) it accounts for and continually verifies the amount of crypto assets within its control, and

(iii) it has established security around custodial private keys to minimize the risk of theft or loss. Since the risk of loss is remote, the company had not recorded a liability at at March 31, 2021 or December 31, 2020.

45.     Coinbase also made the following statement in its Supplement No.1:

"Our Business involves the collection, storage, processing, and transmission of confidential information, customer, employee, service provider, and other personal data, as well as information required to access customer assets. We have built our reputation on the premise that our platform offers customers a secure way to purchase, store, and transact in crypto assets."

46.     Later, in its 10-K annual report for 2021, Coinbase admitted it had flawed data security measures and that it is a target for hackers:

[I]n 2021, third parties independently obtained login credentials and personal information for at least 6,000 customers and used those credentials to exploit a vulnerability that previously existed in the account recovery process. Coinbase reimbursed impacted customers approximately $25.1 million.

47.     In response to questions about scammers and bad actors taking advantage of Coinbase users, Coinbase's Chief Security Officer, Philip Martin, acknowledged that "some bad actors are going to get on [Coinbase]." When pressed on Coinbase's security flaws that leave users accounts vulnerable to financial ruin, he acknowledged: "I'm not going to sit here and say Coinbase Wallet has the perfect [user interface]. Are there improvements we could make? Absolutely. And we will continue to do so."[4]

48.     As disclosed in its privacy policy, Coinbase collects detailed personal data on its users.[7] And Coinbase monetizes the user data it collects. In particular, Coinbase sold detailed user and transaction data and analytics software – including location data – to

---

[4] https://www.washingtonpost.com/technology/2022/04/04/crypto-scams-coinbase-liquidity-mining/

the Immigrations and Customs Enforcement.[5]

49. **As Plaintiff's experience shows, Coinbase uses the detailed personal data it collects to enrich itself, yet Coinbase does not use that data for the benefit of consumers, whose location data could be used to detect and prevent unauthorized activity in Coinbase users' accounts.**

50. Defendant failed to use its own promoted security measures. For example, Coinbase's website stated, "As a security precaution, if you reset your password from a new device, you may not be able to send crypto from your account for up to 48 hours."[6] However, Guishard-Pole's account was never restricted as there were numerous transfers made right after the password was changed.

# Why will my password reset require 24 hours to process?

Under certain circumstances, Coinbase will only process password reset requests from devices that have been previously authorized to access your account. In the interest of keeping your account secure Coinbase may delay the processing of password reset requests for 24 hours if the request originates from a new device. This can only be bypassed by resetting your password from a previously verified device.

As a security precaution, if you reset your password from a new device, you may not be able to send crypto from your account for up to 48 hours.

*Coinbase advertises security that they failed to deliver*

51. Defendant also failed to remedy or restore Plaintiff's losses.

---

[5] https://theintercept.com/2022/06/29/crypto-coinbase-tracer-ice/.

[6] https://help.coinbase.com/en/coinbase/privacy-and-security/other/why-will-my-password-reset-require-24-hours-to-process, as accessed from https://web.archive.org, otherwise known as way back time machine, on August 18, 2022.

52.     At all times, judging upon the history of cyber-security attacks to the platform, Defendant's actions were knowing, willful, and grossly negligent.

53.     An article that appeared on CNBC on August 24, 2021 discussed how Coinbase offered essentially no customer support after numerous accounts were hacked.[7] However, Guishard-Pole's acocunt was hacked in August 2022. In a full year since that article was published, Coinbase failed to implement any changes to make Guishard-Pole's account secure.

### COINBASE ACTS AS A BANK – A MONEY SERVICES BUSINESS

54.     Coinbase acts as a bank. Accordingly, Coinbase should be regulated as a financial institution and forced to guarantee the funds of its customers from fraud.

55.     Just like a banking institution, Coinbase allows direct deposits of paychecks.[8] Property in Coinbase Accounts can be held either in the form of cash or crypto.[9] There is no limit to how much cash can be stored in a Coinbase Account.

56.     Coinbase customers can even sign up for Coinbase Card, a debit card that allows Coinbase customers to spend crypto held in their account at any merchant in Visa's network.

57.     Coinbase holds itself out as a regulated and fully compliant entity, registered with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") as a Money Services Business, as that term is defined by FinCEN. Coinbase also holds itself out as compliant with the Bank Secrecy Act, the USA Patriot Act, states money transmission laws, and corresponding regulations.

---

[7] https://www.cnbc.com/2021/08/24/coinbase-slammed-for-terrible-customer-service-after-hackers-drain-user-accounts.html
[8] https://help.coinbase.com/en/coinbase/trading-and-funding/direct-deposit/start
[9] https://www.coinbase.com/learn/crypto-basics/can-crypto-really-replace-your-bank

58.     Coinbase is also bound by the regulations set forth by DFS, in order to maintain their BitLicense, which includes reporting on any suspicious transactions and taking immediate steps to prevent them in the future.

59.     Section 200.16(a) "Cyber security program" of DFS states in pertinent part:

**"Each Licensee shall establish effective cyber security program to ensure the availability and functionality of the Licensee's electronic systems and to protect those systems and any sensitive data stored on those systems from unauthorized…tampering. The cyber security program shall be designed to perform the following five core cyber security functions: (1) identify…cyber risks by, at a minimum, identifying the information stored on the Licensee's systems, the sensitivity of such information, and how and by whom such information may be accessed; (2) protect the Licensee's electronic systems…from unauthorized access…or other malicious acts through the use of defensive infrastructure and the implementation of policies and procedures; (3) detect systems intrusions, data breaches, unauthorized access to systems or ….other Cyber Security Events; (4) respond to detected Cyber Security Events to mitigate any negative effects; and (5) recover from Cyber Security Events and restore normal operations and services."**

60.     Moreover, upon information and belief, Coinbase failed to report to The Department of Financial Services ("DFS") and The Financial Crimes Enforcement Network ("FinCEn") information about Plaintiff's theft of funds and to provide a statement of any actions taken or proposed to be taken with respect to Plaintiff's loss of life savings, in violation of FinCen's and DFS's regulations and issued guidance to all virtual currency business entities.

61.     Coinbase is regulated by the State of New York and obtained the following license: New York Money Transmitter License, MT 103755 New York Virtual Currency Business Activity Company License, 122466.



When sending funds from Coinbase to an off-site address, you may be asked "are you sending to another digital currency service or exchange?" If you are not, you can simply click "No." If you are, you must click "Yes" and specify the URL of the website of the destination digital currency service or exchange.

When sending money to external accounts we are required to gather a bit of information before processing the transaction. Coinbase is federally registered as a Money Service Business (MSB). In order to comply with federal regulations, we must know if money is sent from a Coinbase account to a financial institution, in this case a digital currency service or exchange.

**_Coinbase.com reassured clients it would comply with federal regulations[10]_**

62.    By its own admission, Coinbase is a federally regulated money services business. "When sending money to external accounts we are required to gather a bit of information before processing the transaction. Coinbase is federally registered as a Money Service Business (MSB). In order to comply with federal regulations, we must know if money is sent from a Coinbase account to a financial institution, in this case a digital currency service or exchange."

**FACTUAL BACKGROUND**

63.    Plaintiff Guishard-Pole is a T-Mobile customer with a number 917-488-88**[11]

---

[10] https://help.coinbase.com/en/coinbase/privacy-and-security/other/coinbase-regulatory-compliance, as accessed from https://web.archive.org, otherwise known as way back time machine, on August 18, 2022.
[11] The last two digits have been redacted to protect plaintiff's privacy.

64.     After high school, Plaintiff Mignon Guishard-Pole left her home in Saint Kitts and Nevis in the Caribbean to travel to New York City to attend the City College of New York ("CCNY").

65.     In 1981, after graduation from CCNY, Guishard-Pole become a clinical nurse manager in critical care unit at Mount Sinai Medical Center in New York City.

66.     Subsequently, Guishard-Pole received a masters from Columbia University in New York, while still working at Mount Sinai.

67.     In 1988, Mignon Guishard-Pole founded Absolute Home Health Care, Inc., in Mount Vernon, NY, in which she dedicated her career to providing nurturing, preventative, and restorative home care services for the developmentally disabled pediatric population.

## FACTUAL ALLEGATIONS

68.     On August 25, 2021, Guishard-Pole's son encouraged her to open a Coinbase Account, since it was the self-proclaimed "most trusted exchange."

69.     Her son planned to use Coinbase so that he could repay her for a loan.

70.     Subsequently, he transferred 10 BTC to his mom on the exchange, which at the time was valued $488,260.90 USD.

71.     The $488,260.90 constituted the vast majority of her retirement savings.[12]

72.     However, on the morning of August 19, 2022, Guishard-Pole realized that there was no service on her mobile phone. She subsequently became aware that her

---

[12]   As of the time of filing, the BTC is worth $28,048.43, $280,484.30 for ten BTC.

phone had been Sim Swapped.

73.    During the breach, the hackers were able to change the registered email address to her Coinbase account, thus enabling them to make numerous undetected transfers, (See attached Exhibit "A" Guishard-Pole's Coinbase Account Records.) eventually draining down her account balance to $0.

74.    Despite repeated calls to Coinbase, Guishard-Pole's was never able to speak to a live agent.



**_Coinbase tweeted the above quote on August 1, 2022_**

75.    On August 22, 2023, Guishard-Pole received an email from Coinbase, which stated "It looks like you are reaching us from an email address that was deleted from your Coinbase account. For security purposes, please email us from the current email address associated with your Coinbase account."

76.    Guishard-Pole replied, "If you are reporting that my email address was deleted, it was not done by me. My account is compromised. I need immediate assistance protecting and regaining access to my account. Please provide next steps, promptly."

If you are reporting that my email address was deleted, it was not done by me.  My account is compromised.  I need immediate assistance protecting and regaining access to my account. Please provide next steps, promptly.

Mignon Eugenie Guishard-Pole

*Above is the email plaintiff sent to Coinbase on August 22, 2023*

77.    On August 24, 2022, Guishard-Pole emailed the CEO, Chief Legal Officer, and the Chief Operating Officer and Vice President, stating in part, "To be completely ignored is horrifying and disconcerting….. I am reaching out to you in desperation and with the sincere hope that I can get some answers and find a path to recover my savings."

-----Original Message-----
From: mguishardp@aol.com
To: brian@coinbase.com <brian@coinbase.com>; paul.grewal@coinbase.com
<paul.grewal@coinbase.com>; emilie.choi@coinbase.com <emilie.choi@coinbase.com>;
Sent: Wed, Aug 24, 2022 12:20 pm
Subject: HELP NEEDED, DESPERATELY! ACCOUNT DELETED!

Dear Coinbase Executive Team,

My name is Mignon Eugenie Guishard-Pole, a 69 year old woman who planned to
retire at the end of this year.  I joined the Coinbase family  between August 23-25,
2021 after the company was highly recommended as a secure, reputable online
platform for Bitcoin. My personal information was comprised at the end of last week,
and to my dismay on Sunday 21st when I attempted to sign into my account I was
rejected. On Monday, August 22, 2022, I called the customer service number,
engaged the online chat and completed the recommend forms but have not received
a response in over 48 hours. To be completely ignored is horrifying and
disconcerting. The  email I received (see below)  states that my email associated with
Coinbase was deleted. However, I have not changed my email address or password;
my Coinbase account is compromised. I need immediate assistance  protecting and
regaining access to my account. Yet, no one will respond to my communications.
Why is that?

I am reaching out to you in desperation and with the sincere hope that I can get some
answers and find a path to recover my savings.

Respectfully,

Mignon Eugenie Guishard-Pole

*Above is an email sent to Coinbase's executives on August 24, 2023*

78.    The email to upper management, like every other complaint Guishard-Pole

filed, received no response.

79.    Simply put, there were no mechanisms in place for the Plaintiff to alert

Coinbase of the fraud and Coinbase had no internal mechanisms to ferret out the

fraud on its own.

80.    As a result of Coinbase's negligence and violation of federal laws, Guishard-Pole was

robbed of her life savings.

81.     Plaintiff is entitled to the return of 10 BTC, or an equivalent sum in United

States Dollars, plus pre and post judgment interest, costs, treble damages for the violations of the Electronic Funds Transfer Act, as well as attorneys' fees.

### LACK OF SECURITY PROTOCOLS

82.     Coinbase has been on notice for years that their security measures were inadequate. Despite this, sufficient security measures were never instituted.

83.     Gemini is a competing crypto exchange. Gemini, restricts withdrawals for the following eight reasons, including but not limited to, sign in from a new device and an automatic 72 hour hold for a password reset.

# Why can't I withdraw my crypto?

Your crypto withdrawals may be temporarily restricted for a few different reas

1. Sign-In From a New Device
2. Pending Bank Transfer (ACH)
3. Pending Debit Card Transfer (24 hour hold)
4. Password reset (72 hour hold)
5. New Authy device detected (72 hour hold)
6. Your account is not fully verified (action required)
7. Pending Verification/Registration
8. Open sell limit order

*The above list of restrictions appears on crypto exchange Gemini.com, which unlike Coinbase offered security*

84.     Coinbase could have implemented all of the above procedures but failed to do so.

85.     For instance, in order to first register a Coinbase account, there were many steps that had to be followed, inclusive of uploading photo identification. This could be required for withdrawals from unrecognized IP addresses as well.

86.    Furthermore, Coinbase could have monitored IP addresses and held up the withdrawal if the IP address was not previously associated with the account.

87.    Despite knowledge of inherent security flaws, Coinbase and its Officers and directors acted with a conscious and reckless disregard of the security of customers, failing to ratify and implement policies that would protect its customers' accounts.

88.    Coinbase Representatives were either complicit with the theft or grossly negligent.

89.    Coinbase officers and directors exhibited a conscious and reckless disregard for the security of its customers by failing to implement sufficient security protocols.

## DEFENDANTS VIOLATED THE ELECTRONIC FUNDS TRANSFER ACT, 15 USC 1693

90.    The Defendants have violated the Electronic Funds Transfer Act, 15 USC 1693 et seq., and accordingly have absolute liability for the stolen funds.

91.    Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b) Limitations on Amount of Liability, states "Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers."[13]

92.    The electronic fund transfer at issue were "unauthorized electronic fund transfers" because they were initiated by a person other than the plaintiff without actual authority to initiate such transfer, and from Plaintiff received no benefit. The primary purpose of

---

[13] https://www.consumerfinance.gov/rules-policy/regulations/1005/interp-6/#6-b-3-Interp-1

the transfer was not the purchase or sale of a security or commodity, but rather for the purpose of stealing securities or commodities.

93.     The plaintiff provided timely actual and/or constructive notice to Coinbase of the unauthorized electronic transfers from her accounts. Indeed, Coinbase knew or should have known of the repeated and widespread breaches of its security and subsequent theft of funds, as well as repeated and widespread requests for assistance from numerous customers, such that it should have been aware of and prepared to handle inquiries concerning unauthorized electronic transfers from the plaintiff's accounts, and should have taken steps to monitor its users' accounts for unauthorized transfers.

94.     Fraudulent transfers had been widely reported as a common issue on the Coinbase exchange. Plaintiff is entitled to any outstanding damages, attorneys' fees, and costs for Coinbase's inadequate investigation pursuant to 15 U.S.C. § 1693m(a).

95.     Coinbase failed to timely correct the "errors" (as noted above, statutorily defined to include "unauthorized electronic fund transfer") in plaintiff's accounts by timely crediting or provisionally recrediting plaintiff's accounts after she had been breached and drained of funds. 15 U.S. Code § 1693f(b)-(c). This failure, separately, results in any outstanding damage owed to plaintiff pursuant to 15 U.S.C. § 1693m(a). Further, because Coinbase never provided disclosures to the plaintiff that were compliant with 12 C.F.R. § 1005.7(b), Plaintiff Guishard-Pole has no liability for the unauthorized electronic fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

96.     In addition, after receiving notice of the breach, Coinbase failed to provide any customer service and failed to meaningful or timely investigate the unauthorized electronic fund transfers.

**CAUSES OF ACTION**

**COUNT I: VIOLATION OF THE ELECTRONIC FUNDS
TRANSFER ACT, 15 U.S.C. § 1693 et seq.**

97.    Plaintiff incorporates by reference all facts and allegations of paragraphs 1-

96 of this Complaint as if the same were fully set forth herein.

98.    The EFTA and its corresponding regulations implemented by the Consumer

Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1005.1, *et seq.* were designed

with the "primary objective" of "the provision of individual consumer rights." 15

U.S.C. § 1693; 12 C.F.R. §1005.1(b) (the "primary objective of the act and this part

is the protection of individual consumers engaging in electronic fund transfers and

remittance transfers.").

Relevant definitions:

a.   A "financial institution" includes banks and credit unions, as well as "any other person
who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. §
1693a(9). A "person" includes "a natural person or an organization, including a
corporation…" 12 CFR § 1005.2(j).

b.   An "account" includes any consumer asset account held directly or indirectly by a
financial institution and established primarily for personal, family, or household
purposes. 15 U.S.C. § 1693a(2); *see also* 12 CFR § 1005.2(j).

c.   A "consumer" is defined as a "natural person." 15 U.S.C. § 1693a(6).

d.   An "error" includes, *inter alia*, an "unauthorized electronic fund transfer." 15 §
693f(f)(1); 12 C.F.R. § 1005.11(a)(vii).

e.   An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer
from a consumer's account initiated by a person other than the consumer without actual
authority to initiate such transfer and from which the consumer receives no benefit." 15
U.S.C. § 1693(a)(12); *see also* 15 C.F.R. § 1005(m). The CFBP (as well as the Board of
Governors of the Federal Reserve System) have specifically stated that "[a]n
unauthorized [electronic funds transfer] includes a transfer initiated by a person who
obtained the access device from the consumer through fraud or robbery." *See* 12 C.F.R.

§ 205, Supp. I at 2(m) (Board of Governors' Official Interpretation of § 205.2(m)); 12 C.F.R. § 1005, Supp. I at 2(m) (CFPB's Official Interpretation of §1005.2(m)); *see also Green v. Capital One, N.A.*, 2021 WL 3810750, at (S.D.N.Y., 2021).

f.  An "electronic fund transfer" includes any transfer of funds initiated through a computer. While the definition does not include any transfer of funds the primary purpose of which is the purchase or sale of a security or commodity, if the security or commodity is regulated by the Securities and Exchange Commission ("SEC") or the Commodity Futures Trading Commission ("CFTC") or is purchased or sole through a broker-dealer regulated by the SEC or through a future commission merchant regulated by the CFTC, the "primary purpose" of the transfers of funds at issue in this action is not the purchase or sale of a security or commodity, but rather outright theft. Indeed, CFPB has made clear that this "Securities Exemption" applies to, for example, a transfer initiated by a telephone order to a stockbroker to buy or sell securities or to exercise a margin call, but *not* a transfer involving an access device that accesses a securities or commodities account that a consumer uses for purchasing goods or services or for obtaining cash (*i.e.*, a Coinbase account). 12 C.F.R. § 1005, Supp. I at 3(c)(4).

99.    Coinbase failed to use the resources and procedures necessary to timely resolve the "error" caused by the fraud to Plaintiff's Account.

100.    Coinbase has failed to conduct good faith investigations into the unauthorized transfers.

101.    Plaintiff is therefore entitled to any outstanding damages, attorneys' fees, and costs under 15 U.S.C. §1693m, as well as treble damages under 15 U.S.C. § 1693f(e).

102.    Accordingly, Plaintiff is owed treble damages, approximately $842,450.10, plus attorneys' fees, pre and post judgment interest, and costs.

## COUNT II: VIOLATION OF REGULATION E NOTICE REQUIREMENTS
## 15 U.S.C. § 1693c; 12 C.F.R. § 1005.7

103.  Plaintiff incorporates by reference all facts and allegations of paragraphs 1-96 of this Complaint as if the same were fully set forth herein.

104.  But for the inadequate protocols, practices, and procedures employed by

Coinbase in diagnosing and detecting possible hacks, Coinbase breached its duty of care to foreseeable victims such as the Plaintiff.

105. 15 U.S.C § 1693c and Regulation E, 12 C.F.R. § 1005.7, requires all financial institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund transfer is made involving a consumer's account. Coinbase, a "financial institution" as alleged herein, violated Regulation E by failing to provide adequate initial disclosures to plaintiff including, as applicable: (1) a summary of plaintiff's, under 12 CFR § 1005.6 or under state or other applicable law or agreement, for unauthorized electronic fund transfers; (2) the telephone number and address of the person or office to be notified when the Plaintiff believes that an unauthorized electronic fund transfer has been or may be made; (3) Coinbase's business days; (4) the type of electronic fund transfers that Plaintiff may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Coinbase for electronic fund transfers or for the right to make transfers; (6) a summary of Plaintiff's right to receipts and periodic statements, as provided in 12 CFR § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 CFR § 1005.10(a) and (d); (7) a summary of plaintiff's right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in 12 CFR § 1005.10(c); (8) a summary of Coinbase's liability to plaintiff's  under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Coinbase may provide information concerning plaintiff's account to third parties; (10) A notice that is substantially similar to Model Form

A-3 as set out in appendix A of 12 CFR 1005.1, et seq., concerning error resolution;

and (11) a notice that a fee may be imposed by an automated teller machine operator

as defined in 12 CFR § 1005.16(a), when the Plaintiff initiates an electronic fund

transfer or makes a balance inquiry, and by any network used to complete the

transaction[14].

**In general, Regulation E requires that after a financial institution receives oral or written notice of an error from a consumer, the financial institution must do all of the following:**

- **Promptly investigate the oral or written allegation of error.**
- **Complete its investigation within the time limits specified in Regulation E.**
- **Report the results of its investigation within three business days after completing its investigation.**
- **Correct the error within one business day after determining that an error has occurred.[15]**

106.  As a result of Coinbase's violation of the notice requirements of 15 U.S.C. §

1693c and Regulation E, Plaintiff is entitled to statutory damages, attorneys' fees,

and costs for this claim pursuant to 15 U.S.C. § 1693m(a).

## COUNT III: NEGLIGENCE

107.  Plaintiff incorporates by reference all facts and allegations of paragraphs 1-

96 of this Complaint as if the same were fully set forth herein.

108.  But for the inadequate protocols, practices, and procedures employed by

Coinbase in diagnosing and detecting possible hacks, Coinbase breached its duty

of care to its customers and to foreseeable victims, including the Plaintiff.

---

[14] https://www.consumerfinance.gov/rules-policy/regulations/1005/7/
[15] https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/#:~:text=An%20error%20under%20EFTA%20and,that%20should%20have%20been%20included.

109.  Coinbase did not have or did not implement a cyber security program as required by the Department of Financial Services.

110.  But for those intentional actions and/or inaction of Defendant and its agents, Plaintiff would not have suffered damages.

111.   As a direct and proximate result of Defendant's negligent conduct, the

112.   But for those intentional actions and/or inaction of Defendant and its agents, Plaintiff would not have suffered damages.

113.  Plaintiff has been damaged through the loss of her property, namely 10 BTC.

### COUNT IV: GROSS NEGLIGENCE

114.   Plaintiff incorporates by reference all facts and allegations of paragraphs 1-96 of this Complaint as if the same were fully set forth herein.

115.   The Defendants owed the duty to the Plaintiff and its users to provide security, consistent with industry standards and requirements, governmental regulations, and its own internal policies, to ensure that its computer systems, networks, and personnel adequately protect the financial information of users who utilized the Coinbase, as well as ensuring that the user's account information would not be attacked by hackers.

116.   Plaintiff was aware and under the assumption and belief, and relied upon Defendant's misleading misrepresentations that they are the most trusted and safest cryptocurrency platform in the world.

117.   Upon information and belief, between 2013 and to this date, Coinbase's users' accounts were subject to countless sim card phishing attacks, which Defendant failed to prevent.

118.    Defendants owed a duty of care to Plaintiff and its users because Plaintiff and other Coinbase users were foreseeable and probable victims of hackers.

119.    The actions of the Defendant amounted to a reckless disregard of the Plaintiff's account as it didn't even bother implementing any of the security measures of rival companies, such as Gemini.

120.    Furthermore, the DFS imposes a duty upon Defendants to implement cyber security measures to protect the exchange, and its users' accounts, sensitive information, and funds, from unauthorized access, use or tampering.

121.    Given the history of countless sim card phishing attacks on Defendant's users' accounts, Defendant was aware and could reasonably foresee that the inadequate security would cause Plaintiff and other such users to sustain substantial financial harm and was therefore charged with a duty to adequately prevent users' accounts from hacker attacks.

122.    As a direct and proximate result of Defendant's grossly negligent conduct, Plaintiff has suffered injury and is entitled to damages and attorneys' fees.

### COUNT V: BREACH OF FIDUCIARY DUTY

123.  Plaintiff incorporates by reference all facts and allegations of paragraphs 1-96 of this Complaint, as if the same were fully set forth herein.

124.  Coinbase essentially acts as a bank, meaning their primary duty is the management and care of the property for others. The Board of Directors and senior management must be able to identify, measure, monitor and control the risks inherent in fiduciary activities, and respond appropriately to changing business

conditions[16].

125. As the custodian of their cryptocurrency assets and acting as an agent transacting on their behalf when they wish to buy, sell, or convert crypto assets on the Coinbase platform, Coinbase has a fiduciary relationship with Plaintiff must exercise the fiduciary duties it, therefore, owes with the utmost good faith, integrity, and in the best interest of Plaintiff.

126. As the custodian of their valuable assets, Plaintiff entrusted Coinbase to ensure the safekeeping of their assets and to provide them with access to and control over their accounts and the assets within those accounts when they want.

127. Defendants owe a fiduciary duty to Plaintiff to protect his account, and transactions relating to that account, and the funds and cryptocurrency assets within those accounts.

128. Defendants owe a fiduciary duty to Plaintiff to timely respond to and resolve their complaints regarding security threats, hacking, and technological issues that preclude Plaintiff's access to their accounts, account transactions, account funds, and cryptocurrency assets.

129. Defendants breached their fiduciary duty owed to Plaintiff to protect their accounts, their transactions relating to those accounts, and their funds and cryptocurrency assets within those accounts.

---

[16] https://www.fdic.gov/resources/bankers/trust-fiduciary-activities/#:~:text=As%20a%20fiduciary%2C%20a%20bank's,appropriately%20to%20changing%20business%20conditions.

130.  As a direct and proximate result of the Defendants' breach of their fiduciary duties, Plaintiff have been damaged in an amount to be proven at a final hearing.

131.  In addition to actual or consequential damages, Plaintiff is entitled to pre-judgment interest, attorney's fees and costs, along with any relief that this Court deems just and proper.

### COUNT VI: BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

132.  Plaintiff incorporates by reference and realleges paragraphs 1-96 contained above, as though fully set forth herein.

133.  The Plaintiff was presented with the User Agreement on a take-it-or-leave-it basis and had no opportunity to negotiate any of the specific terms or provisions thereunder.

134.  Every contract, including the User Agreement, contains an implied duty of good faith and fair dealing.

135.  Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by, among other things, failing to discharge their obligations and provide the services they promised in exchange for the transaction fees they charged Plaintiff for each transaction in their account and for the monies they earned on the funds within Plaintiff's account.

136.  Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to protect Plaintiff's accounts, their transactions relating to those accounts, and their funds and cryptocurrency assets within those accounts.

137.  Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to timely respond to and resolve Plaintiff's complaints regarding security threats, hacking, and technological issues that precluded Plaintiff's

access to their accounts, account transactions, account funds, and cryptocurrency assets.

138.    Defendants breached the User Agreement and the implied covenant of good faith

and fair dealing by failing to return Plaintiff's cryptocurrency assets.

139.    Coinbase's own terms and conditions state as follows:

**1.4. Identity Verification.** During registration for your Coinbase Account, you agree to provide us with the information we request for the purposes of identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crimes and permit us to keep a record of such information. You will need to complete certain verification procedures before you are permitted to use the Coinbase Services. Your access to one or more Coinbase Services and the limits that apply to your use of the Coinbase Services, may be altered as a result of information collected about you on an ongoing basis. The information we request may include certain personal information, including, but not limited to, your name, address, telephone number, e-mail address, date of birth, taxpayer identification number, a government identification, and information regarding your bank account (such as the name of the bank, the account type, routing number, and account number) and in some cases (where permitted by law), special categories of personal data, such as your biometric information. In providing us with this or any other information that may be required, you confirm that the information is accurate and authentic. You agree to keep us updated if any of the information you provide changes. **You authorize us to make inquiries, whether directly or through third parties, that we consider necessary to verify your identity or protect you and/or us against fraud or other financial crime, and to take action we reasonably deem necessary based on the results of such inquiries. When we carry out these inquiries, you acknowledge and agree that your personal information may be disclosed to credit reference and fraud prevention or financial crime agencies and that these agencies may respond to our inquiries in full. This is an identity check only and should have no adverse effect on your credit rating.** Further, you authorize your wireless operator (AT&T, Sprint, T-Mobile, US Cellular, Verizon, or any other branded wireless operator) to use your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber status details, if available, solely to allow verification of your identity and to compare information you have provided to Coinbase with your wireless operator account profile information for the duration of the business relationship. See our Privacy Policy for how we treat your data.

140.    Coinbase, by its very own terms, breached its own contract. It had the capacity

and awareness that it should have required additional verification in order to withdraw

funds.

141.    As a result of Defendants' breach of their contractual duties, obligations and/or

promises arising under the User Agreement and the implied covenant of good faith and fair dealing, Plaintiff was damaged by, including but not limited to, their payment of transaction fees, the loss of use of her account, the inability to access the funds and cryptocurrency assets in her account and the loss of value of those assets, all in an amount to be proven at trial.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CAUSES OF ACTION ASSERTED HEREIN.**

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays for judgment against Coinbase as follows:

1) Enter judgment for Plaintiff on all counts

2) Award compensatory damages to Plaintiff arising from Coinbase's negligence;

3) Award damages to the Plaintiff for Coinbase's gross negligence and the conscious and reckless disregard of its customer's data in violation of New York Law.

4) Award Treble damages for the violations of the violations of The Electronic Funds Transfer Act 15 U.S.C. § 1693 et seq.

5) Award Plaintiff special damages as the emotional distress caused health issues and loss and enjoyment of life.

6) Award Plaintiff costs and reasonable attorneys' fees;

7) Award Plaintiff prejudgment and post judgment interest; and

8) Award Plaintiff such other and further relief as this Court deems just, fair, and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and complete copy of this document was electronically filed with the clerk of courts in the Southern District of New York on the 5th day of October 2023.

Respectfully submitted,

Shrayer Law Firm, LLC.
912 South Andrews Avenue
Fort Lauderdale, FL 33316
Tel.   (954) 601-3732
Email: ghs@shrayerlaw.com


**/s/Glen H. Shrayer**

Glen H. Shrayer, Esq.
Fl Bar No. 57253